IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| STATE AUTO INSURANCE COMPANY, | ) ) ) ) | |
| | ) | **CASE NO. 03-CV-1300-VEH** |
| **Plaintiff** | ) ) | |
| v. | ) ) | |
| ATLANTIC MUTUAL INSURANCE COMPANY, et al. | ) ) ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF OPINION**

## I.

### INTRODUCTION

This is a diversity-based action seeking a declaration that the defendant insurance companies owed a duty to defend Bradley Pulverizer Co. ("Bradley") in a lawsuit styled *Progressive Indus., Inc. v. Bradley Pulverizer Co.* (the "Underlying Lawsuit")[1]. The Underlying Lawsuit was a federal question action (violation of the Lanham Act, copyright infringement, patent infringement) with pendant state claims (unfair competition, false advertising, breach of contract).

---

[1] Progressive Industries, Inc. is hereinafter referred to as "Progressive."

Progressive's original complaint was filed on April 16, 2001, and the First Amended Complaint was filed on April 30, 2001. There is no allegation by any defendant that it was not properly and timely notified of the Underlying Lawsuit and its claims.

Two of Bradley's insurers, Royal Insurance Company of America ("Royal") and State Auto Property and Casualty Insurance Company ("State Auto") defended Bradley under a reservation of rights and ultimately indemnified Bradley by paying Progressive $1,450,000 to settle the case. Prior to such settlement, Royal sued Bradley, Progressive, State Auto, United States Fidelity & Guaranty Insurance Company ("USF&G"), and Atlantic Mutual Insurance Company ("Atlantic Mutual"), seeking a declaration "declaring the rights and duties of the parties to the action, including a determination of whether any or all of the insurers [had] a duty to defend Bradley in the Underlying Lawsuit and/or a duty to indemnify Bradley for any adverse verdict in the Underlying Lawsuit." Bradley cross-claimed against USF&G and Atlantic Mutual for breach of the contracts of insurance and for bad faith.[2] Bradley's cross-claim was amended to add the same claims against Fidelity and Guaranty ("F&G").

In June, 2004, Royal and State Auto, which had been defending Bradley under

---

[2] The bad faith claims were later dismissed.

reservations of rights, paid a total of $1,450,000, on behalf of Bradley, to Progressive. Additionally, Progressive, Bradley, and Royal assigned to State Auto any and all rights they had against Atlantic Mutual, USF&G, and F&G.

On July 12, 2004, Progressive and Bradley filed a joint stipulation of dismissal of the Underlying Lawsuit. On July 13, 2004, the Underlying Lawsuit was dismissed with prejudice. However, this case continued.

Prior to the settlement and dismissal of the Underlying Lawsuit, Atlantic Mutual, State Auto, USF&G, F&G, and Bradley filed, in this case, Motions for Summary Judgment (Docs. 56, 59, 62, 65 and 68). After the settlement and dismissal of the Underlying Lawsuit, Royal, Bradley, Progressive, and State Auto filed a joint Motion to Dismiss (Doc. 111) all claims against Bradley and Progressive. This Motion was granted (Doc. 112) by the court on July 16, 2004. Royal and State Auto then filed a Motion to Re-align (Doc. 113) the parties and to dismiss Royal. After briefing and a hearing, this Motion also was granted (Doc. 120) and State Auto was re-aligned as the sole remaining plaintiff, with Atlantic Mutual, USF&G, and F&G as the remaining defendants. On February 4, 2005, (Docs. 124, 125) State Auto abandoned its Motion for Summary Judgment (Doc. 59) and adopted Bradley's Motion for Summary Judgment (Doc. 68). Therefore, State Auto's Motion (Doc. 59) is **DENIED** as moot. It is the Motions for Summary Judgment of Bradley (now State

Auto), Atlantic Mutual, USF&G, and F&G that are now before this court.

## II.
### SUMMARY DISPOSITION

For the reasons stated hereinafter, Bradley/State Auto's Motion for Summary Judgment (Doc. 68) is due to be **GRANTED** in favor of State Auto and against Atlantic Mutual, USF&G, and F&G.  The Motions for Summary Judgment filed by Atlantic Mutual, USF&G, and F&G (Docs. 59, 62, and 65) are due to be **DENIED**. A separate Order will issue.

## III.
### STANDARD OF REVIEW

> In conducting [a summary judgment analysis], [the Court must] view all evidence and factual inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

*Lofton v. Sec'y of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

4

## IV.
### FACTS

Atlantic Mutual, USF&G, and F&G all issued commercial general liability ("CGL") insurance policies to Bradley for periods including the periods as to which claims in the Underlying Lawsuit were asserted by Progressive against Bradley. The policy issued by Atlantic Mutual bore number 480 40-14-67-3503. The policy issued by USF&G  bore number 1MP137219566.  The policies issued by F&G  bore numbers 1MP137219863, 1MP137220094, 1MP137220193, 1MP137220270, and 1MP137220270-01.

## V.
### ANALYSIS

**A.    *Applicable Law***

As the parties are now aligned, State Auto seeks a declaration that Atlantic Mutual, USF&G, and F&G owed a duty to defend Bradley.[3]  Because this case is a diversity action brought in a federal court sitting in the State of Alabama, Alabama choice of law rules apply.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 61 S.Ct. 1020 (1941).  Alabama choice of laws rules follow the doctrine of *lex loci contractus*,

---

[3]By order dated July 18, 2003, the court bifurcated the proceedings. (Docs. 21 and 27)). The court held that it first would hear motions on whether the insurers had a duty to defend Bradley in the Underlying Lawsuit.  If such a duty existed, the court held that it would then separately hear motions on defense contributions and/or indemnity issues, if any remained and were ripe for adjudication.  For this reason, the court is only addressing the issue of duty to defend.

which provides that contract claims are governed by the law of the place where the contract was executed.  It is undisputed that all of the insurance policies were delivered to, and accepted by, Bradley in Pennsylvania; therefore, Pennsylvania law governs in construing those policies. *Brown Mach. Works & Supply, Inc. v. Ins. Co. of N. Am.*, 951 F. Supp. 988, 992 (M.D. Ala. 1996).  ("Where the last act is 'receipt and acceptance' of an insurance policy, the court must apply the law of the state where this last act occurred.").

## B.    *Judicial Estoppel*

Atlantic Mutual, USF&G, and F&G first argue that the doctrine of judicial estoppel precludes State Auto from seeking a declaration that the insurers owed Bradley a duty to defend because, previously, *in this litigation*, State Auto maintained positions that are completely inconsistent with the positions it takes on the instant motion.  That is, previously, in this litigation, in its now-abandoned and repudiated Motion for Summary Judgment (Doc. 59), State Auto argued the same position (*i.e.* no coverage) that Atlantic Mutual, USF&G, and F&G currently assert. (Doc. 60 Brief by State Auto in response to ex. A of the court's order)

In diversity actions, state law determines issues of judicial estoppel.  *See Original Appalachian Artworks, Inc. v. S. Diamond*, 44 F.3d 925 (11th Cir. 1995) ("[B]ecause this is a diversity case, the application of the doctrine of judicial estoppel

6

is governed by state law.").  Since Atlantic Mutual, USF&G, and F&G have argued in favor of Pennsylvania law, and State Auto has not objected, the court has applied Pennsylvania law on judicial estoppel[4].

Atlantic Mutual, USF&G, and F&G argue that judicial estoppel is applicable here based upon State Auto's inconsistent positions taken in this lawsuit before and after the settlement it entered into with Bradley.  Prior to the settlement agreement, State Auto argued that it had no duty to defend or provide coverage to Bradley with respect to the Underlying Lawsuit.  After the agreement, State Auto amended its position and argued that the other insurers were under a duty to defend Bradley in the Underlying Lawsuit.

The defendants' argument fails on two grounds.  First, Pennsylvania law has held that, as a general rule, a party to an action is estopped from assuming a position

---

[4] The defendants' judicial estoppel argument would fail under any of the potentially applicable legal regimes.  If federal law were applied, State Auto would not be precluded from arguing there is a duty to defend.  Applying federal law, the United States Supreme Court has ruled that "[u]nder the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, *and succeeds in maintaining that position*, he may not thereafter, simply because his interests have changed, assume a contrary position."  *State of New Hampshire v. State of Maine*, 532 U.S. 742 (2001) (emphasis supplied).  The Court cited *United States v. C.I.T. Construction Inc.,* 944 F.2d 253 (5th Cir. 1991) in which the Fifth Circuit stated that, absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations." *Id.* at 259.

The same result also would occur if Alabama law were applied.  In *Ex parte First Alabama Bank*, 883 So.2d 1236 (Ala. 2003), the Alabama Supreme Court adopted the standards for judicial estoppel set forth in *New Hampshire v. Maine*, 532 U.S. 742. *Ex parte First Alabama*, 883 So.2d at 1246.

inconsistent with his or her assertion *in a previous action*, *if his or her contention was successfully maintained. See Trowbridge v. Scranton Artificial Limb Co.*, 747 A.2d 862, 864 (Pa. 2000) (emphasis supplied).   Under this rule, judicial estoppel is inapplicable here because there has been no previous adjudication in which the party seeking to change its position (State Auto) was successful. *Trowbridge*, 747 A.2d at 864.  Instead, State Auto's about-face occurred within a single action.[5]

Second, the Pennsylvania Supreme Court has held that the settlement of a claim is not considered "successfully maintaining" a claim and thus does not give rise to judicial estoppel. *Associated Hospital Serv. of Philadelphia v. Pustilnik*, 439 A.2d 1149, 1151 (Pa. 1981).  State Auto's Settlement Agreement therefore cannot qualify as "successfully maintaining" its prior contradictory position.

Because there has been no prior adjudication and because Pennsylvania law does not consider settlement of a claim as "successfully maintaining" a claim, State Auto is not judicially estopped from now arguing that these insurers had a duty to defend Bradley.

---

[5]  Atlantic Mutual cites *Sunbeam Corp v. Liberty Mut. Ins. Co.,* 781 A.2d 1189 (Pa. 2001), as authority that judicial estoppel prohibits State Auto from changing its previous argument denying coverage to now arguing in favor of coverage. *Sunbeam* is an instance of regulatory estoppel where the defendant had made one argument to the insurance department and later argued the opposite position when claims were made against the defendant by insured policyholders. *Id.* at 1192-93. *Sunbeam*, however, is inapposite to the case at bar because even that case involved, as a minimum, two separate proceedings: an administrative proceeding before the insurance department and a subsequent court action.  Here, this is only a single proceeding.

C.    *Policy Coverage*

Pennsylvania law establishes that:

An insurer's duty to defend an insured in litigation is broader than the duty to indemnify, in that the former duty arises whenever an underlying complaint may "potentially" come within the insurance coverage. *Erie Ins. Exch. v. Claypoole,* 673 A.2d 348, 355 (Pa. 1996). Furthermore, if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim. *Erie Ins. Exch. v. Transamerica Ins. Co.,* 533 A.2d 1363, 1368 (Pa. 1987).

*The Frog, Switch & Mfg. Co. v. The Travelers Ins. Co.*, 193 F.3d 742, 746 (3rd Cir. 1999).

In the Underlying Lawsuit, Progressive alleged: (1) breach of contract; (2) trademark infringement; (2) copyright infringement; (4) patent infringement; and (5) unjust enrichment.  As stated above, an insurer's duty to *defend* is triggered if even one of the claims is a covered claim.   Because the court finds Progressive's trademark, trade dress, and copyright infringement claims to be covered claims, the court has limited its analysis to those claims.

1.    *The Atlantic Mutual Policy.*

Atlantic Mutual's CGL insurance policy issued to Bradley was in effect from January 1, 1998, through January 1, 1999.   (Doc. 69 Brief and Statement of Undisputed Facts by Bradley Pulverizer in Supp. of Mot. for Summ. J.)   Under

"Coverage B" in the Atlantic Mutual policy, there is a provision which states:

> [T]his insurance applies to...(2) 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services; but only if the offense was committed in the 'coverage territory' during the policy period.

(*Id*. at Atl. Mutual's Ins. Policy issued to Bradley effective 01/01/98.)   Atlantic Mutual's policy defines "advertising injury" as:

> [I]njury arising out of one or more of the following offenses: (a) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (b) Oral or written publication of material that violates a person's right of privacy; (c) Misappropriation of advertising ideas or style of doing business; or (d) Infringement of copyright, title or slogan.

(*Id*.)

State Auto claims that Progressive's trademark infringement claim based upon the allegation that Bradley misappropriated Progressive's "MICRO-SIZER" and "MICRO-SEAL" marks constituted a "misappropriation of advertising ideas or style of doing business," which triggered Atlantic Mutual's duty to defend.   Atlantic Mutual contends that Progressive's trademark infringement claims are not covered under its CGL insurance policy.

Atlantic Mutual cites *The Frog, Switch & Manufacturing Co., Inc. v. The*

10

*Travelers Ins. Co.,* 20 F. Supp. 2d 798 (M.D. Pa. 1998), *aff'd,* 193 F.3d 742 (3rd Cir. 1999), as authority that Progressive's Complaint does not allege advertising injury as defined by Atlantic Mutual's insurance policy.   Atlantic Mutual claims that Bradley's alleged infringement is analogous to the alleged infringement in *Frog,* in which the plaintiff alleged the defendant had "misappropriated information about the manufacture of dipper buckets and then advertised the resulting product." *Frog,* 193 F.3d at 748.

In *Frog,* a former employee stole the design and trademark of a product and gave them to his new employer, The Frog, Switch and Manufacturing Company. Frog then used the design to manufacture a product and used the plaintiff's trademark to sell the defendant's product.   Prior to the employee's misappropriation of his former employer's design, Frog had not been in the business of making the product. *Id*. at 745.   In fact, at the time Frog began to manufacture and advertise the product, it had done no design work whatsoever.   The parts and components Frog was offering for sale and selling were made from engineering drawings unlawfully appropriated from the plaintiff by the plaintiff's former employee. *Id.*

The case at bar and *Frog* can be distinguished because *Frog* involved a defendant in the underlying lawsuit who used the design and engineering drawings of the underlying plaintiff to manufacture a product which it then advertised as its

11

own design.  *See* 193 F.3d at 745.  Here, by contrast, Bradley was not alleged to have stolen Progressive's design or engineering techniques.   The complaint in the Underlying Lawsuit is devoid of allegations that Bradley stole any of Progressive designs or engineering techniques.  To the contrary, it is undisputed that Bradley had developed its own product.  Progressive's allegation was that Bradley advertised, manufactured, distributed, sold, or offered to sell a centrifugal air classifier using counterfeit trademarks containing Progressive's trade names and dress[6].  (First Am. Compl. at ¶¶ 13, 37.)

Atlantic Mutual's reliance on *Frog* is further undermined by the Third Circuit's careful qualification of its holding.  In *Frog*, the court specifically acknowledged that allegations of misappropriation of an advertising idea may be covered under the advertising injury provision of a CGL insurance policy, so long as the allegation is that an advertising idea was misappropriated, and not that secrets relating to the manufacture and production of the product were misappropriated.  *Frog*, 193 F. 3d at 748.  That is the very situation presented here.

Moreover, the Third Circuit's subsequent interpretations of *Frog* confirm the conclusion in *Frog* that Progressive's trademark and copyright infringement claims

---

[6] As stated previously, the court is not reaching Progressive's breach of contract and patent infringement claims, and therefore is taking no position as to those claims.

involve covered advertising injuries.  In *CAT Internet Services, Inc. v. Providence Washington Insurance Co.*, 333 F.3d 138, 142 (3rd. Cir. 2002), for instance, the Third Circuit clarified that:

> [W]hen a complaint alleges that an insured misappropriates and uses trademarks or ideas in connection with marketing and sales and for the purpose of gaining customers, the conduct constitutes "misappropriation of an advertising idea or style of doing business" under Pennsylvania law.

Thus, for Atlantic Mutual to prevail under *Frog*, Atlantic Mutual would need to show that Bradley was accused of misappropriating secrets relating to the manufacture and production of a product and not to the misappropriation of a trademark or ideas in connection with marketing.  Atlantic Mutual has offered no such evidence.

Atlantic Mutual's second argument against finding the existence of a duty to defend is based upon the contention that there are "no facts alleged in the amended complaint which would constitute an 'advertising injury' even under the guise of a claim labeled 'trademark infringement.'" (Doc. 123 Atl. Mutual's Reply Supporting its Mot. for Summ. J. at 7.)  While it is unclear whether Atlantic Mutual is referring to the First Amended Complaint or the Second Amended Complaint, in either event, coverage exists.

The First Amended Complaint states a covered claim under 15 U.S.C. § 1125(a)(1)(B) because of the allegation that Bradley used Progressive's registered

13

MICRO-SIZER and MICRO-SEAL trademarks in promoting, advertising, and selling Bradley's goods.  (First Am. Compl. at ¶ 37.)  Based upon *CAT Internet Services*, 333 F.3d at 142, Progressive's allegation of trademark infringement in ¶ 37 of the First Amended Complaint asserts conduct that constitutes "misappropriation of an advertising idea or style of doing business" under Pennsylvania law and therefore, absent an applicable exclusion[7], is covered under Atlantic Mutual's CGL insurance policy.  *CAT*, 333 F.3d at 142.  Even if Atlantic Mutual is referring to the Second Amended Complaint, advertising injury coverage exists because Progressive reasserted the allegation from ¶ 37 of the First Amended Complaint in the Second Amended Complaint.  (Second Am. Compl. at ¶ 27.)  Therefore, absent an applicable exclusion, Atlantic Mutual's duty to defend arose upon receiving notice of the First Amended Complaint.  The duty continued thereafter because Progressive reasserted the 15 U.S.C. § 1125(a)(1)(B) trademark allegation in the Second Amended Complaint.  (Second Am. Compl. at ¶ 27.)

　　　2.　　*The USF&G Policy.*

　　The USF&G CGL insurance policy issued to Bradley was in effect from September 1, 1991, through January 1, 1993. (Doc. 69 Brief and Statement of Undisputed Facts by Bradley Pulverizer in Supp. of it's Mot. for Summ. J.)  Under

---

[7] Discussed in Section C., *infra*.

"Coverage B" in the USF&G policy, there is a provision which states:

> [T]his insurance applies to...(2) 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services; but only if the offense was committed in the 'coverage territory' during the policy period.

(*Id*. at USF&G's Ins. Policy issued to Bradley effective 09/01/91.)  USF&G's policy defines "advertising injury" as:

> [I]njury arising out of one or more of the following offenses: (a) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (b) Oral or written publication of material that violates a person's right of privacy; (c) Misappropriation of advertising ideas or style of doing business; or (d) Infringement of copyright, title or slogan.

(*Id*.)

The advertising injury language in USF&G's policy is identical to that found in Atlantic Mutual's policy.  Therefore, for the reasons stated in 1. above, the trademark, trade dress, and copyright infringement claims against Bradley in the Underlying Lawsuit fell within USF&G's advertising injury provision and, absent an applicable exclusion, triggered a duty to defend Bradley.

2.    *The F&G Policy.*

The F&G CGL insurance policy issued to Bradley was in effect from January

1, 1993, through January 1, 1998. (Doc. 69 Statement of Undisputed Facts and Brief

in Supp. of Bradley Company's Mot. for Summ. J. Ex. F.)  Under "Coverage B" in

the F&G policy, there is a provision which states:

> [T]his insurance applies to...(2) 'Advertising injury' caused
> by an offense committed in the course of advertising your
> goods, products or services; but only if the offense was
> committed in the 'coverage territory' during the policy
> period.

(*Id.* at F&G's Ins. Policy issued to Bradley effective 09/01/92.))  F&G's policy

defines "advertising injury" as:

> [I]njury arising out of one or more of the following
> offenses: (a) Oral or written publication of material that
> slanders or libels a person or organization or disparages a
> person's or organization's goods, products or services; (b)
> Oral or written publication of material that violates a
> person's right of privacy; (c) Misappropriation of
> advertising ideas or style of doing business; or (d)
> Infringement of copyright, title or slogan.

(*Id.*)

The advertising injury language in F&G's policy is identical to that

found in Atlantic Mutual's policy.  Therefore, for the reasons stated in 1.

above, the trademark, trade dress, and copyright infringement claims against

16

Bradley in the Underlying Lawsuit fell within F&G's advertising injury provision and, absent an applicable exclusion, triggered a duty to defend Bradley.

**D.    *Policy Exclusions***

An exclusion in an insurance policy is an affirmative defense and therefore the burden of proving the applicability of such exclusion lies with the insurance company. *Kelmo Enterprises, Inc. v. Commercial Union Ins. Co.* 285 Pa.Super. 13, 29, 426 A.2d 680, 688 (Pa. Super., 1981) ("When a defense is based on an exception or exclusion in an insurance policy, such a defense is an affirmative one, and the burden is on the insurance carrier to establish it. *Weissman v. Prashker*, 405 Pa. 226, 175 A.2d 63 (1961).")

1.    *Atlantic Mutual's Policy.*

Atlantic Mutual's policy contains several important exclusions. Atlantic Mutual's insurance does not apply to "advertising injury":

> (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity; (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period; (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or (4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or

17

agreement.

(Doc. 69 Statement of Undisputed Facts and Brief in Supp. of Bradley
Company's Mot. for Summ. J. Ex. F., Atl. Mutual's Ins. Policy issued to
Bradley on 01/01/98.)

> There also are exclusions for "advertising injury" arising out of:
>
> > (1) Breach of contract, other than misappropriation of
> > advertising ideas under an implied contract; (2) The failure of
> > goods, products or services to conform with advertised quality or
> > performance; (3) The wrong description of the price of goods,
> > products or services; or (4) An offense committed by an insured
> > whose business is advertising, broadcasting, publishing or
> > telecasting.

(*Id.*)

A.    The "First Publication" Exclusion.

The first exclusion invoked by Atlantic Mutual is the "First Publication"
exclusion.  Under the terms of this exclusion, claims related to an "advertising injury"
are not covered if they "[a]ris[e] out of oral or written publication of material whose
first publication took place before the beginning of the policy period." (Id.)

Atlantic Mutual's argument here fails because Atlantic Mutual denied its duty
to defend before the date of first publication was available to it.  An insurance
company's obligation is most often determined primarily, if not exclusively, from the
face of the complaint against the insured.  *See Nationwide Ins. Co. v. Zavalis*, 52 F.

18

3d. 689, 693 (7th Cir. 1995).  This is called the "Four Corners of the Complaint" rule.

Both parties agree that none of Progressive's complaints disclosed the date of first

publication.  Thus, under the "Four Corners" rule, Atlantic Mutual cannot succeed in

its argument that the policy's "First Publication" exclusion applies.

For this reason, Atlantic Mutual urges the court to expand its inquiry beyond

the complaint's four corners.  Admittedly, on occasion, courts will look beyond the

complaint to evidentiary materials that may shed light on the duty to defend, so long

as doing so does not involve them in fact-finding that may overlap or interfere with

the underlying litigation.  *See Zavalis*, 52 F.3d. at 694.  However, Atlantic Mutual

overlooks the fact that the additional information establishing the date of "First

Publication" was not available until Progressive and Bradley began engaging in

mediation, well *after* the litigation had commenced.  Atlantic Mutual concedes that

it did not receive this information until June 24, 2004, when a State Auto employee

provided Atlantic Mutual with Bradley's Mediation Statement.  (Doc. 123 Atl.

Mutual's Reply Submission at 10 n.4.)[8]

An insurer cannot rely upon evidence gathered after coverage has been denied

in order to justify the denial of coverage.  *See Maddox v. St. Paul Fire & Marine Ins.*

---

[8]  In the Mediation Statement, Bradley maintained that the alleged acts giving rise to the
Underlying Lawsuit occurred in the early 1990s.

*Co.* 179 F. Supp. 2d 527 (W.D. Penn. 2001).  Applying Pennsylvania law, the court,

in *Maddox*, held as follows:

> Even if the extrinsic evidence offered by defendants were
> admissible, the insurer[s] would still have a duty to defend
> because when they withdrew coverage they had no
> evidence that any publication by Maddox [the underlying
> defendant] prior to the policy period infringed on Cvetnic's
> [the underlying plaintiff] trademark, and that is exactly
> what they would need to show in order for the prior
> publication exclusion--as I have interpreted it--to apply in
> this case.

*Id.* at 532.

At the time Atlantic Mutual's duty to defend arose, there was no evidence

regarding the first publication date of the alleged conduct in the Underlying Lawsuit.

Because Atlantic Mutual did not obtain the evidence of the date of first publication

until after it denied coverage, it cannot now use this discovery as justification for

denying coverage.

### B.    The Breach of Contract Exclusion.

The second exclusion Atlantic Mutual invokes is the exclusion based upon an

alleged breach of contract.  The Atlantic Mutual CGL insurance policy excludes

advertising injuries arising out of "[b]reach of contract, other than misappropriation

of advertising ideas under an implied contract."  (Doc. 69 Statement of Undisputed

Facts and Brief in Support of Bradley Company's Mot. for Summ. J. Ex. F., Atl.

Mutual's Ins. Policy issued to Bradley on 01/01/98.)  Atlantic Mutual asserts that the 1988 agreement between Progressive and Bradley created a contract which Bradley breached and thus gave rise to the Underlying Lawsuit.  Atlantic Mutual claims that, because the Underlying Lawsuit arose from the contractual breach, it had no duty to defend Bradley. (Doc. 123 Atl. Mut. Reply Submission at 12.)

The Superior Court of Pennsylvania has held that "construed strictly against the insurer, 'arising out of' means causally connected with, not proximately caused by." *Roman Mosaic & Tile v. Aetna Cas. & Sur.*, 704 A.2d 665, 669 (Pa. Super. 1997).  In a copyright infringement action arising in Florida, the United States District Court for the Eastern District of Pennsylvania, citing the *Roman Mosaic* holding, ruled:

> [When] it cannot be said that the claim would not have arisen "but for" the contractual relationship, the contract in place between the parties to the Florida action was collateral and copyright infringement was the "gist" of the counterclaim.

*TIG Ins. Co. v. Nobel Learning Communities, Inc.*, No. CIV.A. 01-4708, 2002 WL 1340332, *11 (E.D. Pa. June 18, 2002).

Bradley's alleged trademark and trade dress infringement violated Progressive's rights under the Lanham Act, 15 U.S.C.A. §§ 1051 *et seq.*  Bradley's alleged copyright infringement violated Progressive's rights under the Copyright Act,

17 U.S.C.A. §§ 101 *et seq.*  Progressive's breach of contract claim is collateral to the claim and trademark and copyright infringement is the "gist" of the claim.  As a result, it cannot be said that Progressive's claim would not have arisen "but for" the breach of contract claim.  Progressive's trademark infringement claim would have been available even if the contract claim were not argued.  The breach of contract exclusion in Atlantic Mutual's CGL policies does not exclude coverage.

C.     The Intentional Conduct Exclusion.

Finally, Atlantic Mutual argues that intentional conduct was the basis of the underlying litigation and therefore coverage was denied under its CGL policy exclusions.  (Doc. 123 Atl. Mut. Reply Submission at 13.)  Atlantic Mutual cites the following exclusion:   "[this CGL insurance] policy excludes coverage for an 'advertising injury' if done by or at the direction of the insured with knowledge of its falsity."  (*Id.*)  Atlantic Mutual asserts "Bradley has failed to point to any fact alleged in the complaint which would provide a basis for a claim that Bradley acted negligently."  (*Id.*)

However, under Pennsylvania law, the exclusion for intentional conduct does not preclude coverage unless the claim involved *requires* intent as a necessary element of the claim.  *Frog*, 193 F.3d at 746**.**  In *Frog*, the Third Circuit held that "when the underlying complaint alleges intentional action, but negligent or reckless

22

action would suffice to make the insured's conduct actionable … such a complaint 'potentially' comes within the insurance coverage [and therefore a duty to defend exists]." *Id.*

> When a complaint alleges intentional misconduct (which insurance policies exclude from coverage) but might be amended to allege some other state of mind that would both trigger coverage and show liability, then the complaint should be treated as setting forth facts that potentially justify coverage. *See Safeguard Scientifics,* 766 F. Supp. at 329-30. This rule reflects the way that the complaint will actually be treated in the courts during the underlying litigation."

*Id.*

The Third Circuit addressed the issue of willful conduct or actions taken with knowledge of their falsity in *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641 (3rd Cir. 1958). In *Parkway*, the Third Circuit held that "there is no requirement [under the Lanham Act] that the falsification [of origin] occur willfully and with intent to deceive."[9] *Id.* at 648. Similarly, copyright infringement need not be

_____

[9] The Lanham Act creates a strict liability tort action, thus willful conduct or actions taken with knowledge of their falsity are not necessary to establish a violation of the Act.

> To succeed on a false advertising claim under the Lanham Act, a plaintiff must show that: (1) the defendant made false or misleading statements about its product in an advertisement; (2) the advertisement actually deceived, or had the tendency to deceive, the targeted audience; (3) the deception is material; (4) the defendant's advertised product traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading advertisement.

*Hyman*, 304 F.3d. at 1195-96 n.13.

intentional in order to be actionable.  *Playboy Enters., Inc. v. Webbworld, Inc*. 968 F. Supp. 1171, 1174 (N.D. Tex. 1997)  ("The copyright owner need not prove knowledge or intent on the part of the defendant to establish liability for direct copyright infringement. 17 U.S.C. § 504(c). *See, e.g., Playboy Enters., Inc. v. Frena,* 839 F. Supp. 1552, 1559 (M.D. Fla. 1993) ("Intent or knowledge is not an element of infringement....").[10]  As a result, Progressive's allegation of "Defendant's willful and deliberate action" is not necessary to establish a violation of either Act. Therefore, the trademark infringement claim and the copyright infringement claim each "arose" *without regard* to the intent or willfulness of Bradley in its advertisement, and the intentional act exclusion does not preclude coverage.

> 2.  *USF&G's Policy.*

USF&G's insurance policy also contains several important exclusions, however these exclusion are identical to those  found in Atlantic Mutual's insurance policy. (Doc. 69 Statement of Undisputed Facts and Brief in Support of Bradley Company's Mot. for Summ. J. Ex. F., USF&G's Ins. Policy issued to Bradley on 09/01/91.) USF&G made substantially the same arguments as those made by Atlantic Mutual.

---

[10]"To establish a prima facie case of copyright infringement, the plaintiff must prove "ownership" of copyrighted material and "copying" by the defendant. *Norma Ribbon & Trimming, Inc.* v. *Little*, 51 F.3d 45, 47 (5th Cir. 1995) (citing *Lakedreams v. Taylor,* 932 F.2d 1103, 1107 (5th Cir. 1991))." *Playboy Enters., Inc. v. Webbworld, Inc.* 968 F.Supp. at 1174.

Therefore, for the reasons stated in A. above, the "First Publication" exclusion is not available to USF&G.  For the reasons stated in B. above, the breach of contract exclusion is not available to USF&G.  Finally, for the reasons stated in C. above, the intentional conduct exclusion is not available to USF&G.

3.    *F&G's Policy.*

F&G's policy is identical to Atlantic Mutual's and USF&G's.  (Doc. 69 Statement of Undisputed Facts and Brief in Supp. of Bradley Company's Mot. for Summ. J. Ex. F., F&G's Ins. Policy issued to Bradley on 09/01/92.)  F&G's arguments for denying coverage are identical to those made by USF&G.  Therefore, for the reasons stated in 1. and 2. above, the exclusions F&G claims are not applicable and do not preclude F&G's duty to defend Bradley in the Underlying Lawsuit.

## VI.
### CONCLUSIONS[11]

1.     *Atlantic Mutual.*

Based upon Third Circuit precedent and other persuasive authority, the Court finds that Atlantic Mutual had an initial duty to defend Bradley in the suit filed by Progressive against Bradley.  None of the exceptions claimed by Atlantic Mutual apply, nor does its argument for judicial estoppel justify Atlantic Mutual's refusal to defend its insured, Bradley.  Therefore, Atlantic Mutual's Motion for Summary Judgment (Doc. 56) is due to be **DENIED**, and State Auto's Motion for Summary Judgment (Doc. 68), adopted from Bradley, as to coverage is due to be **GRANTED** as to Atlantic Mutual.

2.     *USF&G.*

For the reasons in 1. above, the Court finds that USF&G had an initial duty to defend Bradley in the suit filed by Progressive against Bradley.  Therefore, USF&G's Motion for Summary Judgment (Doc. 62) is due to be **DENIED**, and State Auto's Motion for Summary Judgment (Doc. 68), adopted from Bradley, as to coverage is due to be **GRANTED** as to USF&G.

---

[11]State Auto alleges other grounds under which Atlantic Mutual, USF&G, and F&G would have a duty to defend.  Because the court has found that Atlantic Mutual, USF&G, and F&G did have a duty to defend based upon the presence of trademark and copyright infringement claims in the Underlying Lawsuit, the court does not need to examine State Auto's other arguments.

3.      *F&G.*

For the reasons in 1. above, the Court finds that F&G had an initial duty to defend Bradley in the suit filed by Progressive against Bradley.  Therefore, F&G's Motion for Summary Judgment (Doc. 65) is due to be **DENIED**, and State Auto's Motion for Summary Judgment (Doc. 68), adopted from Bradley, as to coverage is due to be **GRANTED** as to F&G.

4.      *State Auto's Motion for Summary Judgment*

Because State Auto adopted Bradley's Motion for Summary Judgment (Doc. 68), it abandoned its Motion for Summary Judgment (Doc. 59).  Therefore, State Auto's Motion for Summary Judgment (*Id*.) is **DENIED** as moot.

**DONE** and **ORDERED** this 28th day of July, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge